AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Texas

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No. |
| Walter Freeman JORDAN III; Jaylen Christine LORING; Daryl Carlton ANDERSON; Deandre Bendard SANTEE; Johnathon Nico WISE; Raymond Demond PACE; Zelmer Samuel BONNER; Derrick Eugene DELANE | ) ) ) ) | H17-1276 |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ July 25, 2017 _____ in the county of _____ Harris _____ in the
_____ Southern _____ District of _____ Texas _____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, §§ 2113(a), (d), and 2 | Aiding and Abetting Aggravated Bank Robbery |
| Title 18, United States Code, §§ 924(c) and 2 | Aiding and Abetting the Unlawful Use of a Firearm in the Commission of a Crime of Violence |

This criminal complaint is based on these facts:

see attached affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Sgt. David Helms
*Printed name and title*

Sworn to before me and signed in my presence.

Date: August 1, 2017

_____
*Judge's signature*

City and state: Houston, Texas

U.S. Magistrate Judge Dena Hanovice Palermo
*Printed name and title*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION


### AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, David Helms, being duly sworn, do hereby depose and state:

1.      I am a Sergeant with the Houston Police Department [HPD], duly appointed according to law and acting as such. I have been a Peace Officer with the HPD for approximately eleven [11] years and am assigned to the Houston Police Department's Robbery Division as a member of the Federal Bureau of Investigation [FBI] Houston Division Violent Crime Task Force [VCTF].   The VCTF is comprised of Task Force Officers [TFO] from the Houston Police Department, the Harris County Sheriff's Office, and Special Agents of the FBI.  The VCTF is responsible for the investigation of, among other violent crimes, bank robbery.  The facts contained in this affidavit are based upon information provided to me by other law enforcement officers, other witnesses, and my own personal knowledge.  Since this affidavit is made for the limited purpose of supporting a Criminal Complaint, I have not set forth each and every fact learned during the course of the investigation.  Rather, I have set forth only those facts that I believe are necessary to establish probable cause for the crimes charged.  Unless otherwise indicated, where actions, conversations, and statements of others are related herein, they are related in substance and in part only.

2.      Based on the facts and circumstances outlined below, there is probable cause to believe that, Walter Freeman JORDAN III also known as "Wacko," Jaylen Christine LORING, Daryl Carlton ANDERSON, Deandre Bendard SANTEE, Johnathon Nico WISE, Raymond

1

Demond PACE, Zelmer Samuel BONNER, and Derrick Eugene DELANE, did knowingly and willfully commit an offense against the United States, to wit: aiding and abetting aggravated bank robbery in violation of Title 18, United States Code, §§ 2113(a), (d), and 2, and aiding and abetting the unlawful use of a firearm in the commission of a crime of violence in violation of Title 18, United States Code, §§ 924(c) and 2.

3.      On Tuesday, July 25, 2017, your Affiant was contacted by Officer Brittany Thaler, a peace officer with the Houston Police Department [HPD], assigned to the Criminal Apprehension Team within the Gang Division. According to Thaler, she and other investigators from HPD believed the "100% Third Ward" [103] criminal street gang were assembling in the Third Ward area for the purpose of robbing a bank. Your Affiant had tasked the Criminal Apprehension Team with surveilling of the 103 gang after developing them as suspects in several bank robberies in and around Houston, Texas. Officer Thaler explained that she saw some irregularities while monitoring JORDAN (Wacko) on July 24, 2017. Thaler told your Affiant that JORDAN was out in Katy, Texas in the Cinco Ranch master-planned community area near the Grand Parkway. Thaler stated there were several banks in that area that were proximate to major thoroughfares, including the Grand Parkway and Katy Freeway. Thaler further explained that on the morning of the robbery, Tuesday, July 25, 2017, JORDAN was in the Third Ward area earlier than had been his habit throughout the surveillance. Thaler told your Affiant that JORDAN seemed to be congregating with other 103 gang members. Thaler also told your Affiant that surveillance had revealed that the 103 gang, including JORDAN, were in possession of a stolen vehicle, a black Toyota Tundra.

4.      HPD officers, working in an undercover capacity, kept this group under visual surveillance. Your Affiant monitored radio traffic describing the four vehicles being utilized by the 103 gang during surveillance - a 2016 silver Chevrolet Malibu, a 2016 Silver Nissan Rogue, a

2

2017 maroon Volkswagen Jetta, and a 2013 black Toyota Tundra. Officers noted that the hard plates on the black Toyota Tundra were replaced with Texas temporary paper tags which were registered to a 2016 BMW motorcycle. The 2016 silver Chevrolet Malibu, 2016 Silver Nissan Rogue, 2017 maroon Volkswagen Jetta, and the 2013 black Toyota Tundra formed a chain in a linear fashion and headed out of the Third Ward area and onto the Katy Freeway westbound for approximately 31 miles until they arrived at the Cinco Ranch community in the same area monitored the day before.

5.     HPD Officers Thaler, Tae, and Mason told your Affiant that for the next hour they observed all four of the listed vehicles run counter-surveillance making "heat runs" up and down Cinco Ranch Boulevard, Peek Road, Grand Parkway, and Greenway Village Drive. A heat run is a driving technique suspects' use by making multiple turns and repeating their route to ensure they are not being followed.  Officers noted that there were several banks in that area within close proximity to each other, the Icon Bank, the Prosperity Bank, and the First Community Credit Union. Your Affiant was monitoring radio traffic during this and knows from his training and experience that bank robbers often use lookouts and counter-surveillance to avoid law enforcement detection before, during, and after the commission of bank robberies.

6.     At approximately 12:52pm on July 25, 2017, the black Toyota Tundra drove from the rear of the First Community Credit Union, a credit union whose deposits were then insured by the National Credit Union Insurance Fund, located at 23120 Cinco Ranch Boulevard, Katy, Texas and drove to the front of the credit union. Once there, three masked, males entered the credit union. The robbers were dressed in dark colored hooded sweatshirts, dark pants, wearing gloves, with their faces concealed. According to surveillance, two of the robbers concealed their faces with dark colored masks, and one with a salmon colored piece of cloth. According to witnesses in the credit

3

union at the time, once the initial team of three robbers entered, they commanded everyone to get on the ground. A witness in the credit union stated that one of the robbers jumped the teller counter and demanded that a credit union employee open one of the teller drawers. Fearing for his/her safety, the employee complied. A witness in the credit union stated that a second robber jumped the teller counter and demanded that a second credit union employee open a second teller drawer. Fearing for his/her safety, the second employee complied. However, becoming impatient with the second employee, the second robber lifted his shirt, brandishing what was described as a black semi-automatic pistol. The robber then punched the credit union employee in the head, yelling "hurry up!" During the course of the robbery, the third robber, armed with and displaying a handgun, initially remained in the lobby of the credit union, keeping customers and employees of the credit union compliant. However, the third robber eventually went around behind the teller counter. Soon thereafter, a fourth robber entered the credit union and screamed "the cops are down the street, let's go!" The robbers then left the credit union.

7.     A customer of the credit union, unaware that a robbery was occurring, attempted to enter the credit union during the course of the robbery. The customer stated that as he/she entered the credit union, he/she was immediately accosted by a robber in the lobby of the credit union who pointed a black semi-automatic pistol at him/her. The customer turned and fled the credit union, and called 911. When the customer observed all four suspects leaving the location, he/she saw that the last robber was carrying a large white bag.

8.     According to a second customer in the credit union at the time of the robbery, it appeared the robbers were communicating with people outside the credit union via cell phone. The customer stated that at least one suspect was holding his cell phone during the robbery and he/she believed the robber to be communicating with people outside the credit union.

9.      Upon auditing the teller drawers, credit union security informed your Affiant that the loss amount from the robbery was $8,397.00 in U.S. currency.

10.     HPD officers conducting surveillance outside the credit union observed the four robbers exit the black Toyota Tundra and enter the credit union and then return to the vehicle. Once the four robbers were back in the black Toyota Tundra, all four of the vehicles being surveilled by HPD officers, including the silver Chevrolet Malibu, the Silver Nissan Rogue, the maroon Volkswagen Jetta, and the black Toyota Tundra, left the scene, traveling together with the Malibu making heat runs around the credit union.

11.     HPD Officer Smith stopped the silver Chevrolet Malibu at Cinco Ranch Boulevard and Grand Parkway within the Lifetime Fitness parking lot, identifying the sole occupant in the vehicle as LORING. LORING was brought back to the scene of the credit union. Officer Smith noted LORING commented without prompting from the officer, "all this is Wacko's fault and I was in the car by myself the entire time." This statement was recorded. Your Affiant knows JORDAN to go by the alias "Wacko."

12.     HPD Sergeant Hung then stopped the maroon Volkswagen Jetta at 1200 West Grand Parkway. Sergeant Hung found the sole occupant of the vehicle, ANDERSON DH ~~JOHNSON~~, to be speaking on the phone prior to the traffic stop. Sergeant Hung noted he was in an unmarked vehicle and as the vehicles left from the location, ANDERSON DH ~~JOHNSON~~ was steadily on his phone and appeared very nervous about the events unfolding, specifically the marked police patrol units passing him and pursuing the black Toyota Tundra. ANDERSON DH ~~JOHNSON~~ was detained and brought back to the original scene. While completing the tow slip for that vehicle, Officer Smith observed a traffic citation issued by the Houston Police Department to Walter JORDAN on the back seat of the vehicle.

13.     HPD Sergeant Richards, Sergeant Vu, and Officer Lombardo stopped the silver Nissan Rogue at the Grand Parkway and Katy Freeway Eastbound split. The vehicle was occupied by the driver, SANTEE, and passenger, WISE.  Your Affiant knows that WISE and JORDAN are brothers.

14.     Marked HPD units attempted to initiate a traffic stop on the black Toyota Tundra. Officer Flores initiated his emergency equipment and the vehicle fled. Officer Flores pursued the vehicle, followed by additional marked units.  The black Toyota Tundra travelled at speeds up to 120 mph and at one point drove eastbound in the westbound feeder road lanes of I-10. Houston Police Department Helicopter unit (Fox) surveilled the chase from the air, relaying to ground units the path taken by the black Toyota Tundra over the course of a 19 mile chase that concluded at The North Post Oaks Lofts apartment complex, 1255 N. Post Oak Road, Houston, Texas. Officer Thaler was aware Terrance Jordan, brother of JORDAN, was a resident of The North Post Oaks Lofts, living in apartment number 1224.

15.     At this location, the vehicle came to a stop and the robbers exited the vehicle and fled on foot.  Affiant spoke with Tactical Flight Officer Gomez who stated upon the suspects fleeing the vehicle, he called out that there were three black male suspects - two wearing black sweatshirts and one wearing what appeared to be a lighter colored possibly gray shirt.  One suspect, later identified as PACE, exited the black Toyota Tundra and attempted to run in front of it. However, the driver of the vehicle had not placed the transmission in park prior to running from the vehicle and PACE was pinned between the vehicle and a brick wall.  PACE was taken into custody there and given medical attention. Recovered from the person of PACE was a black hoodie, and gray and blue gloves. This clothing was observed on video surveillance worn inside the credit union by one of the robbers. Officer Flores also recovered a Springfield semi-automatic,

model# XD45ACP, from the black Toyota Tundra.  Officers set up a perimeter, locked down all entrances and exits, and requested all residents stay in their homes, ensuring that no suspect could leave the premises.

16.     Officers were directed by residents in the community as to the direction of travel of the suspects that fled. HPD K9 Sergeant Opperman had been made aware of the possible situation unfolding prior to the incident by Sergeant Kerry Richards. Prior to the suspects fleeing from the vehicle and jumping the fence, Opperman was stationed inside the apartment complex at 1255 N. Post Oak Rd with K9 Baro already harnessed and leashed.  HPD Sergeant Opperman and his K9 partner Baro were immediately notified and began tracking in the direction provided by residents and came into contact with BONNER. BONNER had shed clothing, but was dripping wet with sweat. BONNER matched the physical description of one of the suspects exiting the black Toyota Tundra.  Opperman told your Affiant that his K9 partner alerted to BONNER.  BONNER was taken into custody in a stairwell within building #1, in which apartment number 1224 was located. Officer Carmona was contacted by Lt. Hardin who directed him to the stairwell where Lt. Hardin had observed a back pack while searching for suspects. Recovered from the backpack was a salmon colored shirt, white and blue gloves, a piece of torn shirt, salmon in color, and $7,996.00 in U.S. currency. The torn shirt and gloves appear on video surveillance and are worn by one of the robbers during the incident.

17.     Management confirmed to Sergeant Richards that JORDAN's brother, Terrance Jordan, was an occupant at 1255 N. Post Oak Road, Apartment #1224.  Your Affiant spoke with Sergeant Chambers of the Houston Police Department who works as a Hostage Negotiator. Chambers informed your Affiant that he had been notified of the incident and had received information that the robbers were held up in unit #1224. Chambers told your Affiant that once the

7

suspects made it inside the apartment, he was contacted by someone who claimed he was JORDAN's godfather. Chambers told your Affiant he was patched into a call with the godfather and JORDAN. Chambers told your Affiant that JORDAN indicated he was inside the apartment. After several hours of negotiation, JORDAN came out of apartment #1224 and was taken into custody, along with DELANE. Officers learned DELANE is JORDAN's brother-in-law. Officers obtained a state search warrant for the premises. Officer Carmona searched the apartment and found both DELANE and JORDAN were washing their clothing. Recovered from the washing machine by Officer Carmona was a dark gray Nike hooded sweatshirt, and a black Under Armor hooded sweatshirt. These items of clothing matched the sweatshirts worn by two of the robbers of the credit union as depicted in video surveillance during the incident. Carmona also recovered a Stoeger Cougar .40 Caliber semi-automatic pistol, from inside the apartment.

18.    Your Affiant spoke with LORING in a custodial interview. LORING listed (281) 739-9909 as her telephone number. Phone records indicate that number was in contact with a number known to be utilized by JORDAN for one hour and two minutes leading up to, during, and after the credit union robbery. LORING stated she was on a three way phone call with JORDAN and his other associates. LORING g stated JORDAN first spoke to her about "getting money" on the Sunday prior to the credit union robbery. LORING stated she took this to mean getting money by illegal means.

19.    Based on the foregoing, your Affiant believes there is probable cause to believe that on July 25, 2017, in the Southern District of Texas, Walter Freeman JORDAN III also known as "Wacko," Jaylen Christine LORING, Daryl Carlton ANDERSON, Deandre Bendard SANTEE, Johnathon Nico WISE, Raymond Demond PACE, Zelmer Samuel BONNER, and Derrick Eugene DELANE, aiding and abetting each other, did commit aggravated bank robbery in violation of

Title 18, United States Code, §§ 2113(a), (d), and 2, and the unlawful use of a firearm in the commission of a crime of violence in violation of Title 18, United States Code, §§ 924(c) and 2.


SERGEANT DAVID HELMS
Houston Police Department


Sworn to and subscribed before me this 1st day of August, 2017, and I find probable cause.


DENA HANOVICE PALERMO
United States Magistrate Judge
Stephen Wm Smith